Good morning, Your Honors. Carl Gunn, representing Mr. Rodriguez. There's a couple of things that are troubling about this case. First, the government is backdooring another offense that was initially charged, Mr. Rodriguez contested, and the government then dismissed. Second, there's significant doubt about the charge they dismissed because the only pills that were tested weren't what the charge said they were. Now, that doesn't by itself mean the enhancement can't be applied, but it does feed into the problems I've raised. By the way, if I can, Your Honor, I'm going to try to save two minutes for rebuttal. The most is the district court's failure to make a finding on the objection to the pre-sentence report statement that the pills were oxycodone and hydrocodone. The problem is there were three potential theories that have been floated out there that the district court could have relied on, and we don't know which one it used. It could have been relying on a rejection of the defense objection and thinking the pills really were oxycodone or hydrocodone. But he said, the district judge said in response to a statement that the officers were mistaken when they believed the pills were oxycodone or hydrocodone, that they were wrong. I can't remember the exact quote. He said, quote, well, it did, but what about the attempt theory? Right. There's two problems. But that means he accepted that they were not oxycodone. I don't think he does. He said that he accepted the statement they were not oxycodone. The PSR said they were not. The objection was made. He didn't rely on them being oxycodone in applying the enhancement. The PSR said they were. The PSR said the officers believed they were, and that it incorporated the results of the testing. No, it didn't say believed, Your Honor. It said they, quote, were, unquote. It incorporated the results of the testing that showed that they were not. Well, it described the report that the defense had submitted. It didn't say we agree with that versus this thing it said in paragraph 7. To go back to what Your Honor said, though, about the district court's will it did statement, that, I don't think, constitutes a finding for two reasons. First of all, that's sort of this tentative thinking in the middle of argument before the prosecutor made a counterargument saying, well, not all the pills were tested, and we think they came from different sources. Third, when the judge got to actually making his findings, what he said was, quote, the defense objections are overruled, unquote. He didn't say the defense objections are overruled except for the one about oxycodone and hydrocodone. He said the defense objections were overruled, and the very first defense written objection was that they weren't oxycodone and hydrocodone. So that's exactly why we require express findings and strict compliance with Rule 32. Is this an example of where we don't know to go with the judge's thinking out loud during argument before he'd heard the rest of the argument, or whether to go with his flat statement when he, quote, makes findings, unquote? It's probably... Oh, let me ask you this. I'm sorry. If the judge had said, okay, more explicitly, even though I think there's an argument that, well, that there is evidence that the judge knew that they were not those drugs, but let's just say you're right on that. And then you go back and the judge goes, yeah, I knew that all along, and the reason that I sentenced you to this was not based on that I thought they were oxycodone. It was because of the attempt, and the attempt doesn't require that they were in fact that, and goes back through everything, and then you're still back in the same spot. And by the way, I'm... But I'll even... I'm going to do it by the preponderance of the evidence, even though you said it needed to be beyond a reasonable doubt, but now you're saying clear and convincing, but I'm going to say by clear and convincing that that's what I think, then you have no... You're in the same spot, right? Well, then a court of appeals like Your Honors can focus on exactly what his theory was. Maybe he'll say it's the attempt, and there's some issues to address about the attempt. You have a problem with the attempt because you don't have a substantial step that strongly corroborates or unequivocally corroborates an intent to sell drugs as opposed to an intent to defraud buyers. He might say, well, I was relying on this point, or two one-hundredths of one one-thousandth of grams of methamphetamines, this trace amount that was in the pills. Well, then Your Honors, the court of appeals can focus on the question of whether this trace amount of drugs that no one could conceivably know about in the pills can really support a possession with intent to distribute. Having that finding... And the other thing about remanding it and telling the judge to make that express finding is it might make him sort of, in a more disciplined way, think through and articulate just what theories he relies on, whether it makes sense, and it would give the attorneys a chance in the district court to explain to him why those theories might not make sense. It would give a focus for both the attorneys in district court and for an appellate court trying to decide whether he's legally right under the law. I don't think the word undisciplined and Judge O'Neill have ever been in the same sentence. And I apologize if I put those in the same sentence. But the point is, and I don't think I said he was undisciplined, I said it would make him more disciplined, which maybe is a little bit of a thing. I think a lot of people would wish he was less disciplined than he is. I've heard that argument, perhaps. But the point is, people are more disciplined in their analysis if they're pushed to be that way. I mean, no matter how disciplined they are innately. And because he didn't make that express finding, he didn't really, like, what does he say? The prosecutor... Let me put it back. You were not the attorney that was there at the sentencing. Correct. So if you were there, then would you have said, well, Judge, let me make it clear that you were saying, you know this is not, you know, I'm confused when you say, I know that, or that's true, or whatever he said about the officer's report. What do you actually think about the drugs? Tell me exactly what you think from what you have. If he had said that, and he had said, yeah, I think the officers were wrong about that. I think we don't have any evidence before us that it was oxycodone and hydrocodone or how all of that, and, but I think that based on the texts and everything else that I have, that there was an attempt here, and I am making that finding by the, by clear and convincing evidence. Or... Because the lawyer there said beyond a reasonable doubt, and now you're arguing clear and convincing. Right. Except the lawyer... And that... I'm sorry. And I think the government took the consistent position, it was preponderance, right? Yes. But the district court lawyer also said, as his preliminary, I object to the preponderance of the evidence. So, I don't think it's as simple as just arguing, yeah, but... There's a difference though. I mean, if the attorney had argued that the clear and convincing evidence standard applied, that would have alerted the district judge to the Valencia factors and whether that standard should have been applied before the enhancement would apply to the sentence. But the attorney never uttered any of those words and never said anything like that. And so, the district court was faced with the government arguing preponderance of the evidence, which is what would typically apply, and defense counsel arguing beyond a reasonable doubt. So, why... It seems to me we need to be reviewing this for plain error because the objection was not made. It certainly could have been made better, Your Honor. However, I guess what I'd do is I'd point the court to the cases I cite in my brief about its claims that are preserved, not arguments, and the Waheed case were on appeal. The defense relied on a different guideline. The claim wasn't even made. So, what you're suggesting, I believe, is that if there's any kind of an argument, whether it actually is the argument you're going to argue on appeal, that the district judge was supposed to discern that and then rule on that, and that we should now be applying something other than plain error. I mean, he wasn't raised before the district court. That's the point. It's not fair. Well, Your Honors, the first words out of the district court attorney's mouth were, I object to the preponderance of the evidence standard. I would submit that's enough, Your Honors. And then his next words were, it should be beyond a reasonable doubt. So, at what point was the district court supposed to go, oh, no, he's really saying that I need to apply the six Valencia factors, and he's saying it should be clear and convincing evidence. There was nothing in that transcript that would have alerted the district judge to that. I certainly think if he said, I object to preponderance of the evidence and never said anything about beyond a reasonable doubt, that would be enough. I don't think he has to cite Valencia or the Valencia factors. And I don't think adding the beyond a reasonable doubt and overreaching for that means he loses the objection. But I see I'm running out of time. All right. I don't know if the court wants me to. If there are not additional questions, I'll give you two minutes for rebuttal. Thank you, Your Honor. Good morning. Good morning, Your Honors. And may it please the court, John Taddey for the United States. I'll begin where the court's questions left off with respect to why the plain error standard should apply to the defendant's claim that the clear and convincing evidence standard applies to the four-level enhancement in this case. As the court's questions were indicating, the claim that the defendant raised before the district court was that the reasonable doubt standard should apply to the fact-finding and sentencing based on Booker and the Sixth Amendment. As this court has recognized in several cases, specifically Statton, the due process-based claim that is the foundation for this court's occasional application of the clear and convincing evidence standard is based on Fifth Amendment due process, not based on Booker. And Booker, quote, excuse me, nothing in Booker, quote, turns on due process concerns or the burden of proof, end quote. That's Statton at page 718. As Your Honor's questions were indicating, the defendant's argument, Booker-based argument, deprived the district court of the ability to consider the Valencia doctrine and the Valencia factors, and that is why the plain error standard applies to clear and convincing evidence. With respect to the clear and convincing evidence standard writ large, as the government argued in its brief, the Ninth Circuit is the only court that in the wake of Booker has continued to apply the clear and convincing evidence standard occasionally. The government's position is that that is incorrect. We understand the defendant's argument that Statton and several other cases post-Booker indicated that the clear and convincing evidence standard may have survived Booker. However, as we argue in our brief, Beckles, which was a due process case unlike Booker, provides this panel with the opportunity to reconsider the continued application of the clear and convincing evidence standard. But even if this court decides not to reconsider that doctrine under the Valencia factors, there's no reason why the clear and convincing evidence standard should apply in this case. There are numerous cases that we cite in our brief, in particular Hopper, Chadwell, Polanco, and Rutledge, in which this court has said a four-level enhancement does not warrant the application of the clear and convincing evidence standard, and that preponderance of the evidence is appropriate. Specifically in Chadwell, Polanco, and Rutledge, this court rejected the application of the illegal firearm in connection with another felony offense, and the government's position is that those cases are controlling. With respect to the question of whether the actual substances contained in the pills were oxycodone or hydrocodone, the questions this court was asking with respect to the record are correct. On page 11 of the excerpts of record, the government specifically conceded, we don't The test did not indicate that the drugs were what the officers believed them to be based on their visual inspection. And then the government went on to argue an attempt theory and a possession with intent to distribute theory on the basis of a detectable amount of methamphetamine. Then on page 14 of the excerpt of record, the defense counsel argued, I would also object to the fact that the police officers stated that they were oxycodone and hydrocodone. They were not. This was pure speculation without foundation. It turned out to be a very inaccurate statement. The court in response said, well, it did, and then moved on to ask about the argument with respect to an attempt. This was an express finding that met the requirements of Federal Rule of Criminal Procedure 32. Well, I guess what counsel for the appellant is saying is that the judge should have said, I know, you know, there is no evidence that it's oxycodone and hydrocodone. Are you saying that by what he said, that is impliedly contained in that? Yes, Your Honor, it is. And this court's case law on this is very clear, it requires an express finding. It doesn't require an explicit finding. And there is an express finding in that statement there that it is accepting the government's that there was not actually oxycodone and hydrocodone, and then moving on to ask about attempt and entertaining arguments about it. Is there any confusion that he was sentenced on an attempt? No. In fact, the government at the very end of the hearing on page, excuse me for a moment, Your Honor, on page 33 clarified whether or not the enhancement was based on attempt or based on possession with intent to distribute, and the district court said that the finding was alternatively on both, on both an attempt theory and on a possession theory. But that followed the government's argument with respect to the trace amount of methamphetamine that the toxicology report was contained within the pills. And as the Ninth Circuit panel jury instructions indicate, all that is required is a detectable amount of a controlled substance. The defendant does not need to have knowledge of the specific substance that is contained as long as the defendant has a demonstrated knowledge that there is some sort of controlled substance within these pills. And the record indicates and the factual findings of the district court indicate that there was significant evidence that the defendant had that knowledge. He bought two hundred... Well, is there a Ninth Circuit case that says that you can charge someone with the possession of a specific controlled substance and convict him on the basis of proof of yet another? Yes, Your Honor. We cite them on page 33 of our brief. So in the Ninth you could charge a specific controlled substance, prove an entirely different one and still prevail? I believe that case is steward, Your Honor, on page 33 of the government's brief. And in that case, this court affirmed the defendant's conviction for attempted sale of methamphetamine. Well, that's an attempt, right? Yes, Your Honor. I'm talking about a substantive offense. A substantive offense. I'm not familiar with a specific case that addresses that factual circumstance. But our position is that the Ninth Circuit's jury instructions and the cases that we cite on page 33 with respect to possession of a substance, when the defendant winds up being wrong as to what his belief is, is sufficient. The Ninth Circuit jury instructions 9.15 specifically say, quote, it does not matter whether the defendant knew that the substance was a specific controlled substance. It is sufficient that the defendant knew it was some kind of a federally controlled substance. And the logic of that rule. And so the savings here is that it was meth? Yes. The clearest path to affirmance in this case is the finding that the toxicology report revealed that there was a detectable amount of methamphetamine. That supports possession with intent to distribute with respect to the 2K4 level enhancement. And a gun was found in close proximity to those pills. That is the most straightforward path to affirmance in this case. And it is well supported by the Ninth Circuit's pattern jury instructions and by the case law. Thank you. Unless Your Honors have any further questions, we would urge the court to affirm the judgment of the district court. Thank you. Thank you. Several points, Your Honor. First of all, Your Honor, on Judge Callahan, your question, whether there was any confusion about whether the judge relied on attempt, I think there was confusion and it might have arisen out of the lack of an express finding because he says, well, both. It was actual or attempt. You can't actually be guilty of both the actual crime and attempt. You're either guilty of one or the other. So I think that in and of itself is confusion, as does my dropping papers on the floor. Second, Your Honors, about his- It's only if we doze are you allowed to drop the book. On attempt, there's a problem here with reliance on the attempt theory because if you're relying on the attempt theory, the application note that was relied on doesn't apply. The application note requires that the gun be in, quote, close proximity, unquote, to quote, drugs, unquote. If there's an attempt because there were no drugs, then there's not close proximity to drugs and you have to go on to the more difficult question of whether there was facilitation. So one problem here that may not be highlighted as much in the briefs as it could be is that close proximity rationale doesn't apply to an attempt. And so that means it makes a big difference whether you relied on actual or attempt. To go back to the government says everything was conceded by the prosecutor. It just wasn't. She did say, yeah, testing on two of the pills, quote, does not indicate, unquote, were her words that they had oxycodone and hydrocodone. But then later, and it's after the judge's, quote, well, it did, unquote, comment, she said, hey, judge, all of them weren't tested. And judge, some of them may have come from his mother's prescription suggesting there's two sources. So maybe some of them were oxycodone or hydrocodone. And if the judge agreed that they weren't oxycodone and hydrocodone, that the defense objection to that was correct, if the judge agreed with that, why did he say when he got to the point of actually making findings in the opposing sentence, the defense objections are overruled. At the very least, we don't have the sort of express record here and strict compliance that the rule requires. I didn't think there was a difference between express and explicit like my colleague suggested, but whichever you want to go with, it wasn't here. Okay. Thank you both for your argument in this matter. It will stand submitted. All right. The court's just going to take a short recess before handling the last two argued cases on calendar. So we'll be back within 10 minutes. So don't go far. Thank you.
judges: Lucero, Callahan, Bade